UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


JEFF GRAHAM and AMY MCCOY,                                3:15-cv-0990-AC

                            Plaintiffs,                   FINDINGS AND
                                                          RECOMMENDATION
                    v.

U.S. BANK, NATIONAL ASSOCIATION,
As Trustee, Successor In Interest To Bank
Of America, National Association,
Successor In Interest To Lasalle Bank,
National Association, As Trustee For
Washington Mutual Mortgage Pass-Through
Certificate Wmalt Series 2007-OA3 Trust;
and PITE DUNCAN, LLP,

                            Defendants.
_____

ACOSTA, Magistrate Judge:

                            *Introduction*

        Plaintiffs Jeff Graham ("Graham") and Amy McCoy ("McCoy") (collectively

"Plaintiffs") bring this action against defendants U.S. Bank ("the Trust") and Pite Duncan, LLP

("Pite Duncan.")  This action arises out of the 2013 judicial foreclosure and sale of a house in

Portland, Oregon.   Plaintiffs' complaint alleges violations of the Protecting Tenants at Foreclosure Act ("PTFA"), violations of the Oregon Unlawful Trade Practices Act ("UTPA"), and common-law torts: trespass to chattels, trespass to real property, nuisance, and negligence. Plaintiffs seek a declaratory judgment for their PTFA claims and money damages for their remaining claims.

The Trust and Pite Duncan (collectively, "Defendants") move to dismiss Plaintiffs' complaint in its entirety.   (Def. U.S. Bank's Mot. to Dismiss ("Mot."), (Dkt. No. 10); Def. Pite Duncan's Joinder Notice ("Pite Joinder"), (Dkt. No. 13.))   Defendants argue that the underlying foreclosure judgment bars almost all of Plaintiffs' claims under the issue preclusion doctrine, requiring dismissal of such claims.   Defendants also argue that Plaintiffs' UTPA claims, trespass to property claim, and nuisance claim should be dismissed for failure to state a claim.   In the alternative, Defendants move to strike Plaintiffs' claims for non-economic damages.

For the reasons set out below, the court recommends Defendants' motion to dismiss (Dkt. Nos. 10 & 13) be granted in part and denied in part.

*Factual Background*

On a motion to dismiss, the court accepts as true the following factual allegations from Plaintiffs' complaint, with all reasonable inferences made in Plaintiffs' favor.   *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).   The court does not accept as true allegations that are contradicted by documents attached to the complaint.   *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (collecting cases), *cert. den.* 135 S. Ct. 2313 (2015).   While the court generally considers only the complaint itself on a motion to dismiss, the court may consider documents attached to the complaint and incorporated by reference without converting

the motion to a motion for summary judgment.  *United States v. Ritchie*, 342 F.2d 903, 907-08 (2003).

I.  Parties and Property

Plaintiffs began living in a home located in Portland, Oregon ("the Property") under a one-year residential lease from Lynn and Leslie Decker ("the Owners") in 2010.  (Compl. ¶ 5.) At the time, the Owners owned the Property subject to a trust deed held by the Trust.  (Compl. ¶¶ 5-6, Ex. 2 at 23-36.)  Upon expiration of the initial lease, Plaintiffs continued as month-to-month tenants.  (Compl. ¶ 5.)  In March 2012, Plaintiffs and Owners resolved mutual legal disputes over the tenancy in a written settlement agreement and agreed to extend Plaintiffs' tenancy through June 2012.  (Compl. ¶ 5, Ex. 1 at 12-15.)  After June 2012, Plaintiffs continued their tenancy month-to-month until the events occurred which gave rise to this lawsuit.  (Compl. ¶ 5.)

II.  Foreclosure Proceedings

The Trust filed a complaint in Multnomah County Circuit Court against the Owners and the unnamed occupants of the Property in November 2012, seeking to foreclose on the Property. (Compl. ¶ 6 & Ex. 2 at 1-10.)  (Hereinafter the "Foreclosure Action").  At the time, Shapiro & Sutherland, LLC represented the Trust.  (Compl. ¶ 9.)  Plaintiffs, named as "unknown occupants," were served with the complaint on December 5, 2012.  (Compl. ¶ 7.)  This complaint specifically sought "immediate possession" for the purchaser of the Property, and "if the Property is not vacated, the Court, upon motion, should forthwith order the clerk of the court to issue a writ of assistance ordering the sheriff to deliver possession of the property to the purchaser."  (Compl. Ex. 2 at ¶ 26.)  Plaintiffs did not file an answer or otherwise appear within thirty days of service.  (Compl. Ex. 5.)  On March 14, 2013, the Trust sent Plaintiffs a letter

regarding the foreclosure complaint.  (Compl. ¶ 8.)  The letter informed Plaintiffs the Trust did not seek money damages against them and that Plaintiffs were served "solely because [they were occupants] of the Property that is subject to the foreclosure process, and therefore entitled to legal notice of the pending foreclosure."  (Compl. ¶ 9 & Ex. 4.)  Having not yet appeared in the Foreclosure Action, Plaintiffs decided that "they did not have a financial interest in the foreclosure sale proceeds" and did not file an answer or make any other appearance in the case. (Compl. ¶ 9.)

On March 27, 2013, the Trust filed a motion for default judgment against the Plaintiffs, still named as unknown occupants.  (Compl. ¶ 9.)  The state trial court granted that motion, and entered a default judgment against Plaintiffs on April 3, 2013.  (Compl. ¶ 9.)  Soon after the default judgment, the Trust moved for entry of a stipulated judgment ("Foreclosure Judgment") against all defendants.  (Compl. ¶ 10.)  Plaintiffs were served with the proposed judgment by mail on May 1, 2013.  (Compl. Ex. 7 at 13, 18.)  The state trial court granted the Trust's motion for entry of judgment on May 17, 2013.  (Compl. ¶ 10.)  The Foreclosure Judgment, among other provisions, granted the purchaser of the Property immediate possession and allowed the purchaser to apply to the court for a writ of assistance if any defendants to the Foreclosure Action (including Plaintiffs) refused to surrender possession.  (Compl. Ex. 8 ¶ 9-10.)   The judgment granted immediate possession to the purchaser after the sheriff's sale without the PTFA-required 90-day notice.  (Compl. ¶ 10.)  The Trust purchased the Property at a sheriff's sale on October 10, 2013.  (Compl. ¶ 10 & Ex. 9.)  Plaintiffs learned of the sale at an unspecified later date.  (Compl. ¶ 11.)

The Trust began actively seeking possession of the Property from Plaintiffs beginning in April 2014.  (Compl. ¶ 14-29.)  Pite Duncan replaced Shapiro & Sutherland as counsel for the

Trust in the Foreclosure Action in July 2014. (Compl. ¶ 16.) The Trust, through Pite Duncan, obtained an *ex parte* writ of assistance to remove the Owners and other occupants (including Plaintiffs) from the Property. (Compl. ¶ 16.) The Multnomah County Sheriff's Office forcibly removed Plaintiffs and their family from the Property on August 18, 2014, pursuant to the writ of assistance. (Compl. ¶ 17.) After the August removal, Plaintiffs attempted to regain access to the Property by communicating[1] with Pite Duncan and other agents of the Trust. (Compl. ¶ 20.) Plaintiffs' communications with all parties were unsuccessful. (Compl. ¶ 20.) Plaintiffs then reentered the property by force, changing the locks and removing screws and boards from the windows. (Compl. ¶ 21.) Defendants continued their efforts to remove Plaintiffs from the Property, including by obtaining another writ of assistance from the court. (Compl. ¶¶ 22-25.) Defendants attempted to execute the second writ of assistance, but were unable to schedule execution before the writ expired. (Compl. ¶ 25.) Plaintiffs retained counsel in October 2014, who contacted Defendants regarding Plaintiffs' objections to their removal and rights under the PTFA. (Compl. ¶ 26.) Pite Duncan posted a 90-day notice of termination of tenancy on the Property on November 14, 2014. (Compl. ¶ 29.) Graham vacated the property in January 2015; McCoy vacated in May 2015. (Compl. ¶ 2.)

*Procedural Background*

Plaintiffs filed this lawsuit and assert multiple claims for relief. The claims arise out of Defendants' post-judgment conduct. Primarily, Plaintiffs claim the Foreclosure Judgment did not authorize their removal from the Property without notices required under the Protecting Tenants at Foreclosure Act ("PTFA"). First, Plaintiffs seek declaratory judgment on aspects of their removal, specifically:

---

[1] Plaintiffs attached emails between McCoy and Katie Riggs, an attorney with Pite Duncan. Those emails are only partially legible. (*See* Compl. Ex. 17.)

A) That Plaintiffs were bona fide tenants under the PTFA, pursuant to a month-to-month lease at the time of the October 2013 foreclosure sale;

B) Plaintiffs had a right to occupy the Property until US Bank terminated that right by providing a valid "notice to vacate" as required under the PTFA;

C) Each Defendant's conduct between January 2014 and December 31, 2014 violated the PTFA, either knowingly, recklessly, or negligently, once or more;

D) Defendants misrepresented or omitted information regarding the PTFA and their lack of compliance in their writ motions and associated pleadings;

E) Defendants unlawfully ousted Plaintiffs on August 18, 2014;

F) Defendants unlawfully took steps to oust Plaintiffs from September to November 2014; and

G) US Bank failed to tender the promissory note to the Court as required by UTCR 2.060.

(Compl. ¶ 37.)

Second, Plaintiffs allege several claims under the Oregon Unlawful Trade Practice Act, in two broad categories. The first category alleges UTPA violations based on specific provisions of the UTPA, as follows: The claims from paragraph 38 are as follows:

A) Causing confusion as to the agency, affiliations, connections, associations, approvals to act for others, or provide services, including as between US Bank, Pite Duncan, SPS, NW Realty Group, Premiere Property Group, Ben and Carolyn Campbell, Katie Campbell (Ben and Carolyn's assistant), and unnamed but described persons;

B) Passing off Plaintiffs' property right as that of another by asserting that Plaintiffs had no right to occupy the Property, that Defendants had immediate right to possession, and taking action based upon that assertion;

C) Failing or refusing to clearly identify, and causing confusion as to the owner of the Property or interested party in communications with Plaintiffs or in court filings);

D) Failing or refusing to communicate with Plaintiffs regarding their tenancy, occupancy, right to possession, and access to the Property and their possession;

E) Asserting that Defendants were qualified, approved, or able to obtain possession to the Property through either writ of assistance application, under the

May and November 2014 notices to vacate, and in various communications with Plaintiffs and others; and,

F) Misrepresenting that the nature of the foreclosure sale entitled Defendants to immediate possession.

(Compl. ¶ 38 (citations to complaint and exhibit omitted).)

The second category alleges Defendants violated the UTPA by misrepresenting a number of issues:

A) That defendants had the right to obtain the Sheriff's assistance to remove Plaintiffs from the Property;

B) That the May 30, 2014 demand for possession entitled defendants to possession of the Property or a writ of assistance;

C) That the November 12, 2014 demand for possession entitled defendants to possession of the Property or a writ of assistance;

D) That a party other than US Bank was not the Property owner (ex. 13, 16); E) That Plaintiffs were required to affirmatively provide a copy of their rental agreement and rental payments to trigger the PTFA's protections;

F) That Defendants' removal of Plaintiffs by writ of assistance was legal.

(Compl. ¶ 39 (citations to complaint and exhibit omitted).)

Third, Plaintiffs allege a state-law claim of trespass to chattels, based on their inability to access their personal property following the August 2014 writ of assistance. (Compl. ¶ 43.) Fourth, Plaintiffs allege alternative state-law claims for trespass to real property and nuisance, also based on the August 2014 writ of assistance. (Compl. ¶ 45.) Finally, Plaintiffs allege Defendants were negligent in removing them from the Property, under both negligence per se and common-law negligence theories. (Compl. ¶¶ 48-52.) Plaintiffs' negligence per se claim is based on a statutory standard of care derived from the PTFA; their common-law negligence claim is based on foreseeable harm flowing from violations of the PTFA. (*Id.*)

As relief, Plaintiffs seek a declaratory judgment, economic damages, noneconomic damages, punitive damages, and attorney fees and costs. (Compl. 19-20, ¶¶ 1-5.)

*Legal Standards*

## I.  Motion to dismiss — FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A defendant making a motion to dismiss asserts that the allegations in the complaint do not form a basis for relief. FED. R. CIV. P. 12(b)(6).  The court may consider documents attached to the complaint and incorporated by reference in addition to the complaint under an FRCP 12(b)(6) motion.  *United States v. Ritchie*, 342 F.2d 903, 907-08 (2003).  The court does not need to accept allegations as true if contradicted by documents attached to the complaint. *Gonzalez*, 759 F.3d at 1115.

## II.  Motion to strike — FED. R. CIV. P. 12(f)

A motion to strike under FRCP 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  A motion to strike is "neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Yamamoto v. Omiya,* 564 F.2d 1319, 1327 (9th Cir.1977)).

*Discussion*

Defendants move to dismiss Plaintiffs' complaint in its entirety and to strike Plaintiffs' claims for noneconomic damages.  Defendants' primary argument is issue preclusion bars most of Plaintiffs' claims.  Defendants alternatively argue some of Plaintiffs' claims should be

dismissed for failure to state a claim regardless of issue preclusion. Defendants also seek to strike Plaintiffs' claims for noneconomic damages. Finally, Defendants argue the absolute litigation privilege bars all of Plaintiffs' claims. The court will consider these issues in turn.

## I. Preliminary Procedural Matters

As a preliminary matter, the court will address the *Rooker–Feldman* doctrine's limitations on this case. Plaintiffs argue their claims are exempt from issue preclusion because federal law preempts the Foreclosure Judgment. (Pls.' Am. Opp'n to Mot. to Dismiss ("Opp'n"), Dkt. No. 19, 18.) The preemption doctrine invalidates state law that is explicitly or implicitly inconsistent with federal law. *Hubbard v. SoBreck, LLC*, 554 F.3d 742, 744 (9th Cir. 2009). Whether state court judgments are subject to preemption is unclear. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005) (applying preemption to statutes, regulations, and common-law principles). Such an argument implicates a jurisdictional limitation on this court: the *Rooker–Feldman*[2] doctrine. Litigants cannot use a federal district court to appeal a state court judgment.

Plaintiffs cannot ask this court to reject the Foreclosure Judgment under federal law alone, because the *Rooker–Feldman* doctrine bars federal actions seeking "review and rejection" of state court judgments. *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). To the contrary, federal courts must give state court judgments full faith and credit, absent clear congressional intent to "deny binding effect to a state-court judgment." *Allen v. McCurry*, 449 U.S. 90, 104 (1980). Federal courts must also determine the preclusive effect of state-court judgments under state law. *See id.* at 96. Accordingly, the court cannot deny a state-court judgment preclusive effect on preemption grounds unless an Oregon court would do so.

---

[2] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1982).

*Rooker–Feldman* also bars part of Plaintiffs' claim for declaratory judgment. Plaintiffs seek a declaration that: "US Bank failed to tender the promissory note to the Court as required by UTCR 2.060." (Compl. ¶ 38(G).) This claim seeks review of "the state court's application of various rules and procedures pertaining to [Plaintiffs'] case." *See Allah v. Superior Court*, 871 F.2d 887, 891 (9th Cir. 1989). Other than the Supreme Court, federal courts lack jurisdiction to conduct such review. *Id.* Accordingly, the court should dismiss this portion of Plaintiffs' claim for declaratory judgment for lack of jurisdiction.

## II. Issue Preclusion

The doctrine of issue preclusion provides that a party is bound by prior determination of an issue in another proceeding. A defendant may raise issue preclusion in a motion to dismiss. *Fairbank v. Underwood*, 986 F. Supp. 2d 1222, 1231 n.5 (D. Or. 2013). As discussed above, the court must apply Oregon issue preclusion law to determine the preclusive effect of an Oregon circuit court judgment. 28 U.S.C § 1738; *see ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014) ("We determine the preclusive effect of a state court judgment by applying that state's preclusion principles."). Oregon courts apply a five-part test to determine issue preclusion:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Utility District*, 318 Or. 99, 104 (1993) (citations omitted). Issues of both fact and law may be precluded. *Drews v. EBI Co.*, 310 Or. 134, 140 (1990).

The party seeking preclusion has the burden of proof on the first, second, and fourth *Nelson* factors. *Barackman v. Anderson*, 214 Or. App. 660, 666-67 (2007) ("*Barackman I*") (citing *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 275 Or. 97, 104-05 (1976)). Once the moving party meets its burden, the party against whom preclusion is sought bears the burden of proof on the third and fifth *Nelson* factors. *Id.* at 667. Accordingly, the court will consider the first, second, and fourth *Nelson* factors to determine whether Defendants establish a prima facie case for issue preclusion. The court will then consider the third and fifth *Nelson* factors to determine whether Plaintiffs demonstrate issue preclusion argument should not apply.

Defendants assert Plaintiffs' claims are premised on an issue determined in the Foreclosure Action — whether the purchaser of the property was entitled to immediate possession of the property. Defendants argue the Foreclosure Judgment determined the issue of immediate possession in its favor. Specifically, Defendants rely on the Judgment's provision that:

> The purchaser at the sale is entitled to exclusive and immediate possession of the Property from and after the date of the sale and is entitled to such remedies as are available at law or in equity to secure possession.

> The purchaser at the sale may apply to the Court for a writ of assistance if any Defendant or any person holding possession under or through such Defendant(s) shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession.

(Compl. Ex. 8 ¶¶ 9-10.) A proposed version of the judgment, with identical language, was served on Plaintiffs by mail. (Compl. Ex. 7 at 13, 18.) The Trust sought a substantially similar form of relief in its initial complaint: "[T]hat the purchaser is entitled to immediate possession of

the Property and, if the Property is not vacated, the Court, upon Motion, should forthwith order the clerk of the court to issue a writ of assistance ordering the sheriff to deliver possession of the Property to the purchaser." (Compl. Ex. 2 ¶ 26.)

Essentially, Defendants contend that the Foreclosure Action — to which Plaintiffs were a party — was the appropriate venue for Plaintiffs' to assert their PTFA arguments. Because Plaintiffs did not appear in the Foreclosure Action or contest the Foreclosure Judgment, Defendants contend issue preclusion prevents any claims for relief based on a possessory right existing after the Foreclosure Judgment or based on the invalidity of the writ of assistance. Plaintiffs respond the PTFA creates only post-foreclosure protections, which would have been prematurely raised in the Foreclosure Action. Plaintiffs additionally argue the PTFA creates obligations on the post-foreclosure successor-in-interest, which could be asserted only against the purchaser of the property.

Plaintiffs misapply the issue preclusion doctrine — issue preclusion does not apply to arguments about an issue, but to the issue itself. As explained below, the Foreclosure Judgment precludes relitigation of the Trust's right to immediate possession and to writs of assistance.

### A. *First* Nelson *factor: Identical issue*

Under Oregon's issue preclusion analysis, the initial question is whether the "issue in the two proceedings is identical." *Nelson*, 318 Or. at 104. Defendants bear the burden of proof on this factor. *Barackman I*, 214 Or. App. at 667. The issue in two proceedings is identical if the first case decided the precise factual or legal issue presented in the second case. *Nelson*, 318 Or. at 104. Thus, the Oregon Supreme Court, in *Nelson*, found that whether an employee had been discharged for "misconduct," as defined by statute, was not identical to whether an employee had been discharged for violating a workplace rule. *Id.* Though the issues were similar, the issue of

whether a discharge was due to misconduct involved application of a statutory definition, which excluded one-time violations of workplace rules. *Id.* Applying *Nelson*'s identical issue factor, the Oregon Court of Appeals held that the issue of company's liability for a specific form of tax in a given tax year was identical to the issue of liability for the same tax in a different year, when "the legal question" remained unchanged. *Stewart Title Guar. Co. v. State ex rel. Dep't of Consumer & Bus. Servs.*, 272 Or. App. 138, 145 (2015).

In this case, Defendants seek to preclude relitigation of two questions: whether the purchaser of the Property was entitled to immediate possession of the property following sale at foreclosure ("possession issue"), and whether the purchaser could use a writ of assistance to vindicate its possessory interest ("writ issue"). (Trust Mot. 8.) Plaintiffs respond that the issue in the Foreclosure Action was entitlement to foreclosure, not the timing and manner of transfer of possession. (Opp'n 16.) While Plaintiffs are correct that the Foreclosure Action required determination of entitlement to foreclosure, issue preclusion applies to all issues appearing on the face of the judgment. *Clawson v. Prouty*, 215 Or. 244, 253 (1959) (citing OR. REV. STAT. § 43.160). The Foreclosure Judgment granted the Trust "exclusive and immediate possession" and explicitly authorized "a writ of assistance if any Defendant . . . shall refuse to surrender possession to the purchaser immediately on the purchaser's demand for possession." (Compl. Ex. 8 ¶¶ 9-10.) The complaint also sought specific forms of relief: "immediate possession of the Property, and if the Property is not vacated . . . a writ of assistance ordering the sheriff to deliver possession of the property to the purchaser." (Compl. Ex. 2 ¶ 26.) Plaintiffs' complaint now seeks to challenge the validity of the purchaser's right to immediate possession and of the subsequent writ of assistance. (Compl. ¶¶ 37-39, 43, 45.) Plaintiffs raise different legal arguments, but not different legal issues; the "legal question[s]" are unchanged. *See Stewart*

*Title Guar. Co.*, 272 Or. App. at 145.  The possession and writ issues are identical to those raised in the foreclosure proceeding.

### B.  *Second* Nelson *factor: Actually litigated and essential to decision*

Next, *Nelson* requires that the issue was "actually litigated and was essential to the decision on the merits."  318 Or. at 104.  Defendants bear the burden of establishing this factor. *Barackman*, 214 Or. App. at 667.  Defendants argue that this element is satisfied by inclusion of both issues (possession and writ) in the complaint and judgment in the foreclosure proceeding. Plaintiffs contend that immediate possession without the PFTA-required notice was "a contingent and uncertain event" based on the complaint and judgment, and therefore was not essential to the judgment.  (Opp'n 17.)

The explicit mention of the possession and writ issues in the complaint and judgment satisfy the second *Nelson* factor.  First, an issue is actually litigated "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination . . . ." *Thomas v. U.S. Bank Nat'l Ass'n*, 244 Or. App. 457, 472 (2011) (quoting R*ESTATEMENT* (S*ECOND*) *OF* J*UDGMENTS* § 27 comment d (Am. Law Inst. 1982)).  As noted above, the issues Defendants argue are precluded were explicitly raised in the pleadings and submitted for the trial court's determination.   (Compl. Ex. 2 ¶ 26.)   The doctrine of issue preclusion applies to default judgments, such as the judgment against Plaintiffs in the foreclosure proceeding.  *See Gwynn v. Wilhelm*, 226 Or. 606, 609 (1961) (applying issue preclusion from a default judgment to "matters essential to the judgment").  Accordingly, both issues were actually litigated for the purposes of issue preclusion under Oregon law.

The second *Nelson* factor also requires that the issue to be precluded was "essential to the decision on the merits." 318 Or. at 104.  An issue is essential to the decision on the merits if it is

"necessarily adjudicated by the former judgment." *Gwynn*, 226 Or. at 610. Issues explicitly decided in a judgment are necessarily adjudicated in the judgment. *Id.*; *see also* OR. REV. STAT. § 43.160 (the issues decided by a judgment are those appearing on the face of the judgment or other issues necessary to a decision). In this case, the Foreclosure Judgment explicitly resolves the precise issues Defendants seek to preclude. The possession and writ issues were necessarily adjudicated by the Foreclosure Judgment because their resolution appears on the face of the judgment. (Compl. Ex. 8 ¶¶ 9-10.)

Plaintiffs' arguments to the contrary are unpersuasive. Plaintiff first argues that the issue of post-sale possession and its timing could not have been adjudicated in the underlying action. (Opp'n 16-17.) In support of this argument, Plaintiffs rely on language from *Heller v. Ebb Auto Co.*, 308 Or 1 (1989). *Heller* is distinguishable. In *Heller*, the prior proceedings were a state administrative hearing and appeal to the Oregon Court of Appeals. *Id.* at 3. The relevant issue was only raised on appeal. *Id.* at 3-4. The Court of Appeals affirmed the decision without opinion. *Id.* at 4. In absence of an explicit decision on the issue, *Heller* held that a court could only infer decision of issues a court "was legally obliged to decide." *Id.* at 5. Here, the court's decision appears on the face of the judgment. (Compl. Ex. 8 ¶¶ 9-10.) Defendants do not ask the court to infer decision of other issues from the judgment. The *Heller* standard is irrelevant when the prior proceeding explicitly decided the issue.

Similarly unavailing are Plaintiffs' arguments that they either did not have to assert their claims in the foreclosure proceeding or were not bound by the default judgment. None of Plaintiffs' cited cases stand for the proposition that a tenant named and served in a foreclosure action does not need to appear to protect their PTFA protections. Plaintiffs' principal case, *Mik v. Federal Home Loan Mortgage Co.*, 743 F.3d 149, 154-55 (6th Cir. 2014), did not involve

tenants named in a foreclosure.  ("[Tenants] were not named as parties in the foreclosure action either by name or as "unknown tenant(s) or occupant(s).").  Plaintiffs rely on the *Mik* court's determination that "the [tenants] were not required to intervene in the foreclosure action" and that the tenants did not need to assert their claims "in the context of a foreclosure proceeding" to retain claims under the PTFA.  But those determinations must be read in the context of that case: tenants who were not parties to a foreclosure did not need to intervene in a foreclosure proceeding to retain their PTFA protections.  *See id.* at 161 n.8.  Here, there is no dispute Plaintiffs were parties to the Foreclosure Action.  *Mik* is inapposite.

Plaintiffs' other cited cases also do not support their argument.  Instead, all of the cases are either civil actions following an ejectment without an opportunity to be heard, or direct appeals from an eviction, forcible entry & detainer (FED), or foreclosure proceeding. *See, e.g., Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1165 (9th Cir. 2013) (civil action following FED proceeding); *House v. Fed. Home Loan Mortgage Corp.*, No. 4:14-CV-129-D, 2015 WL 135979, at *1 (E.D.N.C. Jan. 9, 2015) (civil action following foreclosure where tenant was not named); *Bank of N.Y. Mellon v. De Meo*, 254 P.3d 1138, 1139 (Ariz. Ct. App. 2011) (appeal from FED proceeding); *Nativi v. Deutsche Bank Nat'l Trust Co.*, 167 Cal. Rptr. 3d 173, 182 (Cal. Ct. App. 2014) (civil action following non-judicial foreclosure); *Curtis v. U.S. Bank Nat'l Ass'n*, 50 A.3d 558, 563 (Md. Ct. App. 2012) (appeal after tenant intervened in foreclosure proceeding).

Finally, Plaintiffs argue the final judgment in the case should not be granted preclusive effect because the Owners stipulated to the judgment.  (Opp'n 18.)  That the owners, and not Plaintiffs, stipulated to the judgment does not change the preclusive effect of the judgment, because Plaintiffs were subject to a default judgment by failing to appear within 30 days of service of the summons and complaint.  Or. R. Civ. P. 7(c)(2), 69.  Both default and stipulated

judgments are entitled to preclusive effect under Oregon law.  *Gwynn*, 226 Or. at 609 (default judgments have preclusive effect); *Rawls ex rel. Dep't of Human Res. v. Evans*, 182 Or. App. 75, 86 ("[T]he fact that the proceedings were resolved by stipulation, rather than by a full trial on the merits, is not a bar to the application of issue preclusion.")  The judgment Defendants rely on was stipulated by the Owners, but enforceable against Plaintiffs because of their default. (Compl. Ex. 7 ¶ 1.)

### C.  *Fourth* Nelson *factor: Party to prior proceeding*

For issue preclusion to apply, the party against whom estoppel is sought must have been a party to or in privity with a party to the prior proceeding. *Nelson*, 318 Or. at 104; *State Farm Fire & Cas. Co. v. Reuter*, 299 Or. 155, 160-61 (1985).  Defendants have the burden of proof on this factor.  *Barackman I*, 214 Or. App. at 667.  Defendants argue that Plaintiffs were parties to the Foreclosure Action. (Reply 5-6.)  Plaintiffs and Defendants do not appear to dispute that this factor is established, as Plaintiffs allege as much in their complaint.   (Compl. ¶¶ 7-10.) Accordingly, Defendants meet their burden, establishing a *prima facie* case for issue preclusion. *See Barackman I*, 214 Or. App. at 667.  Plaintiffs now bear the burden of proof on the remaining *Nelson* factors. *Id.*

### D.  *Third* Nelson *factor: Full and fair opportunity to be heard*

The third *Nelson* factor requires that the party against whom preclusion is sought "has had a full and fair opportunity to be heard on that issue." *Nelson*, 318 Or. at 104.  Whether a full and fair opportunity to be heard existed depends on whether the forum presented a full and fair opportunity to be heard, not whether the party used their opportunity.  *Barackman v. Anderson*, 338 Or. 365, 371 (2005) (hereinafter *Barackman II*).  Formal judicial proceedings presumptively present a full and fair opportunity to be heard.  *Century Home*, 275 Or. at 106.  Oregon courts

apply a fairness exception to judicial proceedings when "confidence in the integrity of the determination is severely undermined, or that the result would likely be different in a second trial." *Century Home*, 275 Or. at 108.  Plaintiffs have the burden of establishing this factor. *Barackman I*, 214 Or. App. at 667; *see also Century Home*, 275 Or. at 105.

The Foreclosure Action provided a full and fair opportunity to be heard.  It was a formal judicial proceeding in an Oregon Court.  (Compl. Ex. 2.)  The complaint provided notice that the Trust sought immediate possession.  (Compl. Ex. 2 ¶ 26.)  Plaintiffs had the opportunity to respond to the complaint, and failed to do so.  (Compl. ¶ 8.)  Whether parties exercise their opportunity to be heard is immaterial to the third *Nelson* factor; whether the opportunity exists is the only relevant inquiry.  *Barackman II*, 338 Or. at 371 (incentive to litigate is not relevant to the third *Nelson* factor).  Therefore, Plaintiffs had a full and fair opportunity to be heard.

But, Plaintiffs' complaint raises the fairness exception: the March 2013 letter to Plaintiffs regarding the Foreclosure Action.  Despite the presumption of a full and fair opportunity to be heard in a formal judicial proceeding, Oregon courts deny preclusive effect when "confidence in the integrity of the determination is severely undermined, or that the result would likely be different in a second trial." *Century Home*, 275 Or. at 108.

While Plaintiffs do not address the letter in their response, it is relevant to the fairness exception.  The letter, written shortly before the Trust filed for a motion to default, does not mention the Foreclosure Action's effects on Plaintiffs' rights or the Trust's intent to seek default.  (Compl. ¶ 8 & Ex. 4.)  To the contrary, the letter represents that Plaintiffs were served "only because [they were] occupant[s] of the property that is subject to the foreclosure process, and therefore entitled to legal notice of the pending foreclosure."  (Compl. Ex. 4.)  Construed in the

light most favorable to Plaintiffs, this letter misrepresents the Foreclosure Action's impact on Plaintiffs' tenancy.  (Compl. ¶ 8.)

By itself, however, the letter does not "severely undermine" confidence in the foreclosure proceeding such as to render application of issue preclusion unfair.  Considering all relevant circumstances, Plaintiffs' decision to not appear in the Foreclosure Action cannot be traced solely to the letter.  Plaintiffs were served with a copy of the complaint and summons[3] in December 2013.  (Compl. ¶ 7.)  The Trust's counsel sent the letter three months later in March 2014, shortly before the Trust moved for default judgment.  (Compl. ¶¶ 8-9.)  Under Oregon law, Plaintiffs were required to "appear and defend within 30 days from the date of service" — a period of time which expired two months before Plaintiffs received the letter.  OR. R. CIV. P. 7(C)(2).  Further, Plaintiffs could have moved the state trial court for relief from the default judgment, including for mistake or because of misrepresentation by an opposing party.  OR. R. CIV. P. 71(B)(1).  Considering all of the circumstances, the letter does not "severely undermine" the court's confidence in the Foreclosure Judgment because Plaintiffs had notice of the issues and failed to appear prior to receipt of the letter, as well as the ability to contest the default judgment after its entry under Oregon Rule of Civil Procedure 71(b)(1)..  Accordingly, Plaintiffs fail to meet their burden on the third *Nelson* factor.

### E.  *Fifth* Nelson *factor: Type of proceeding entitled to preclusive effect*

The fifth *Nelson* factor requires that the prior proceeding "was the type of proceeding to which [the Oregon Supreme Court] will give preclusive effect."  318 Or. at 104.  In Oregon, "[a]

---

[3] Oregon law requires that a summons contain a number of warnings to the recipient, including to "READ THESE PAPERS CAREFULLY" (capitalization in original) and "[a] direction to the defendant requiring defendant to appear and defend within [30 days] and a notification to defendant that in case of failure to do so, the plaintiff will apply to the court for the relief demanded in the complaint."  OR. R. CIV. P. 7(C)(1)(b) & (C)(3)(a).  A summons must also state that a defendant must appear within thirty days.  OR. R. CIV. P. 7 (C)(3)(a).

proceeding that concludes in a judicial judgment unquestionably satisfies the final requirement of issue preclusion." *State Farm Fire & Cas. Co. v. Sallak*, 140 Or. App. 89, 94 (1996). Without citation to authority, Plaintiffs argue that only a forcible entry and detainer action would be entitled to preclusive effect on the possession issue. (Opp'n 18.) Forcible entry and detainer actions are not an exclusive remedy for determining possessory rights. *See* OR. REV. STAT. § 105.110. Instead, a forcible entry and detainer action is a method for adjudicating possessory rights. *Class v. Carter*, 293 Or. 147, 150 (1982). A foreclosure proceeding may determine a right to possession. OR. REV. STAT. § 18.946(1).

Plaintiffs also argue *Housing Authority of Portland v. Asana*, 165 Or. App. 531 (2000), shows that Oregon courts would not grant preclusive effect to a judgment containing preempted language. However, *Asana* was not about preemption. 165 Or. App. at 536 n.1 ("This case is not about the doctrine of federal supremacy."). Further, *Asana* was a direct appeal from a judgment of restitution, not a subsequent collateral attack on the validity of the judgment. *Id.* *Asana* does not address the doctrine of issue preclusion, nor does it support Plaintiffs' arguments.

In sum, Defendants meet their burden of proof on the first, second, and fourth *Nelson* factors. Plaintiffs fail to meet their burden of proof on the third and fifth *Nelson* factors. Accordingly, Plaintiffs are precluded from relitigating the issues of the purchaser's right to immediate possession following the foreclosure sale and the purchaser's entitlement to a writ of assistance to secure such possession.

III. PTFA protections following the foreclosure action

Before determining the scope of preclusion, the court addresses Plaintiffs' PTFA arguments. In their opposition, Plaintiffs argue extensively about the protections of the PTFA and numerous alleged violations of the PTFA following the Property's sale at foreclosure.

(Opp'n 6-14.)  Defendants' motion does not attack the merits of Plaintiffs' PTFA arguments. Instead, Defendants argue that Plaintiffs' PTFA arguments should have been raised in the foreclosure proceeding, to which Plaintiffs were a party.  Defendants are correct: Plaintiffs failed to respond to both a complaint and a proposed judgment seeking relief contrary to their protections under the PTFA.  The Foreclosure Action was the correct venue to assert their protections under the PTFA.

The PTFA, passed in 2009, temporarily added additional protections for tenants residing in homes subject to foreclosure.  The PTFA expired in 2014.  *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, § 1484, 124 Stat. 1376, 2204 (2010) (extending the sunset date of the PTFA until December 31, 2014).  Under the PTFA, a tenant had certain protections in the event of foreclosure:

> (a) . . . In the case of any foreclosure on a federally-related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to--
> (1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and
> (2) the rights of any bona fide tenant, as of the date of such notice of foreclosure--
> (A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or
> (B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),
> except that nothing under this section shall affect the requirements for termination of any federal– or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

Prevent Mortgage Foreclosures and Enhance Mortgage Credit Availability Act, Pub. L. 111-22, § 702, 123 Stat 1632, 1660-61 (2009) (formerly codified at 12 U.S.C. § 5220)

Once Plaintiffs failed to present their PTFA arguments as a defense, they waived their arguments.  The PTFA did not create a private right of action.  *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1169-73 (2013).  Instead, the PTFA created a defense for use in judicial proceedings in which a party is seeking possession.  *Id.* at 1173 (noting that detainer actions typically have a notice requirement, which the PTFA extends).  Prior adjudication of the right to immediate possession bars subsequent state-law claims based on the PTFA. *Grayham v. Fannie Mae Corp.*, No. Civ. 11-6194-HO, 2012 WL 89838, at *1-2 (D. Or. Jan. 9, 2012).  In *Grayham*, the court dismissed the tenants' PTFA-based state-law claims because the tenants chose not to assert PTFA protections when the purchaser sought possession in an FED proceeding. *Id.* at *2 ("[T]he protections afforded plaintiffs by the PTFA should have been raised in the FED action.").  Under Oregon's issue preclusion doctrine, Plaintiffs cannot relitigate the possession and writ issues in this action.

Plaintiffs also argue the Foreclosure Judgment must be read as though it contains the language of the PTFA.  (Opp'n 10.)  For this proposition, Plaintiffs cite *Asana*, 165 Or. App. 531, but *Asana* turned on federal law pertaining to subsidized public housing, and involved a tenant who agreed to a stipulated judgment resolving an eviction complaint.  *Id.* at 533.  The stipulated judgment, among other terms, reinstated the tenant's tenancy; however, the judgment provided for "immediate restitution" of the premises if the tenant violated the judgment. *Id.*  The court held that the new lease created by the stipulated judgment was subject to federal law prohibiting immediate termination clauses in federally subsidized public housing leases, which rendered unenforceable the immediate restitution clause in the resulting lease. *Id.* at 537 (citing 42 U.S.C. § 1437d(l)(4) (1994)).  This holding was expressly based on creation — by the stipulated judgment — of a new lease subject to federal housing law.  *Id.* at 536 n.1 ("This case

. . . involves the interpretation of a lease that contains certain terms by operation of law . . . .").
Accordingly, the court concludes Oregon courts would not read the Foreclosure Judgment as
though it contained the terms of the PTFA.

## IV. Scope of preclusion

For the preceding reasons, Plaintiffs would be precluded from relitigating the rights to
immediate possession and to a writ of assistance in Oregon state courts.  Under 28 U.S.C.
§ 1738, this court must grant the Foreclosure Judgment the preclusive effect it would have in
Oregon state courts.  *See Allen v. McCurry*, 449 U.S. 90, 96 (1980).  Therefore, the next issue
before the court is which claims the Foreclosure Judgment precludes.  Plaintiffs assert claims for
relief for declaratory judgment, UTPA violations, trespass to chattels, trespass to real property,
nuisance, and negligence.  (Compl. ¶¶ 37-52.)

### A.  Declaratory Judgment

Plaintiffs seek declaratory judgment under 28 U.S.C. § 2201, based mostly on the
PTFA's requirements.  Defendants argue that this claim is precluded because it seeks relitigation
of Plaintiffs' PTFA protections.  (Mot. 10.)  Defendants are correct that subparagraphs 37 B, E,
and F seek to relitigate the possession and writ issues by seeking declarations contrary to the
Foreclosure Judgment.  Plaintiffs' other claims do not explicitly seek relitigation of precluded
issues, but, for the reasons discussed below, Plaintiffs' declaratory judgment claim should be
dismissed because it lacks an underlying cause of action.

### B.  Unlawful Trade Practices Act

Plaintiffs assert multiple claims under the UTPA.  (Compl. ¶¶ 38-39.)  Claims based on
either an ongoing right to possession following the foreclosure sale or the validity of the
Foreclosure Judgment are barred by issue preclusion.  Similarly, the claims made in

subparagraphs 39 A, B, C, E, F, and G rely on precluded issues. These claims assert varying statements and communications were misrepresentations, based on an ongoing right to possession and the invalidity of the Foreclosure Judgment. With the possession and writ issues precluded, these claims should be dismissed because they do not state a claim on which relief can be granted.

### C. Trespass to Chattels

Plaintiffs make a claim for trespass to chattels based on their inability to use personal property following their ouster from the Property due to the first writ of assistance. (Compl. ¶ 43.) Defendants seek to dismiss this claim because it seeks to relitigate the writ issue. The court disagrees. Plaintiffs plausibly allege trespass to chattels without implicating precluded issues. Under Oregon law, "[t]he elements of a claim for trespass to chattels are, for relevant purposes, the same [as a claim for conversion]; the only arguable differences are the extent of the interference and remedy." *Scott v. Jackson Cnty.*, 244 Or. App. 484, 500 (2011) (citing *Mustola v. Toddy*, 253 Or. 658, 664 n.4 (1969)). In turn, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola*, 253 Or. at 633.

Plaintiffs allege two theories of trespass to chattels. One theory alleges Defendants interfered with Plaintiffs' possessory rights to their personal property by refusing to allow Plaintiffs to regain possession of the Property. (Compl. ¶¶ 20, 43.) This legal theory is untenable in light of the Foreclosure Judgment. Plaintiffs also claim the Trust's agent denied them access to their personal property following their removal. (Compl. ¶ 20 & Ex. 15.) This theory does not rely on precluded issues. The writ of assistance required the Trust to "make

[Plaintiffs'] personal property available at reasonable times for eight (8) full days after execution of the writ . . . ."  (Compl. Ex. 13, at 21).  Plaintiffs plausibly allege Defendants failed to do so. A property owner can commit trespass to chattels when regaining access to property by impairing the occupant's access to personal property.  *See Lee Tung v. Burkhart*, 59 Or. 194, 204-06 (1911) (a landlord's removal and storage of the inventory of a store pursuant to a condemnation order showed a trespass to chattels).  Accordingly, Plaintiffs' claim for trespass to chattels remains viable, but only to the extent it is based on Defendants' refusal to allow Plaintiffs to remove their personal property.  Defendants' motion to dismiss Plaintiffs trespass to chattels claim should be denied.

### D.  Trespass to Real Property/Nuisance

Plaintiffs also make claims for trespass to real property and nuisance.  (Compl. ¶¶ 45-47.) Defendants argue that these claims fail to state claims upon which relief can be granted.  The court agrees.   Plaintiffs' trespass to real property and nuisance claims explicitly rely on Plaintiffs' right to possession ("right to exclusive possession" and "possessory rights") following the Foreclosure Judgment.  (Compl. ¶¶ 45-46.)  Under Oregon law, both trespass to real property and nuisance require the plaintiff to have a valid possessory right. *Raymond v. S. Pac. Co.*, 259 Or. 629, 634, (1971) (nuisance is an invasion of an interest in land); *Dobkins v. Hutton*, 129 Or. 648, 651 (1929) (a valid possessory right is an element of trespass to real property).  The Foreclosure Judgment precludes Plaintiffs from arguing their possessory rights survived foreclosure. Thus, Plaintiffs cannot state a claim upon which relief can be granted based on a theory of trespass to real property or nuisance.

### E.  Negligence

Plaintiffs' negligence claims are also predicated on the invalidity of the Foreclosure Judgment. (Compl. ¶¶ 48-52.) As discussed at length above, Plaintiffs cannot relitigate the validity of the Foreclosure Judgment and the writs of assistance authorized under the judgment. The negligence claims seek to relitigate precisely those issues.  Plaintiffs' negligence claims allege "unlawful ouster" and that Defendants "were never entitled to terminate Plaintiffs rights to occupy the property."  Without relitigating the precluded issues, Plaintiffs cannot state a claim on which relief can be granted.

## V.  Failure to State a Claim

Defendants' motion contends that the remainder of Plaintiffs' claims fail to state a claim on which relief can be granted, and should be dismissed under FRCP 12(b)(6).  To survive this motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Naffe*, 789 F.3d at 1035.  The court may consider attached documents, and may reject allegations in the complaint if attached documents directly contradict the allegations.  *Gonzalez*, 759 F.3d at 1115.

### A.  Declaratory Judgment

Plaintiffs seek declaratory judgment on the merits of their PTFA arguments.  (Compl. ¶ 27.)  Defendants oppose this claim, arguing that the declaratory judgments seek to circumvent the lack of a private right of action under the PTFA.  As discussed above, claims B, E, and F are precluded by the Foreclosure Judgment and claim G is barred by *Rooker–Feldman*.  However, the entire claim for relief contains a fundamental flaw.  The Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not create a cause of action; instead, it creates a remedy for existing causes of action.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

Plaintiffs' declaratory judgment claims, with the exception of claim G, arise out of the PTFA. (Compl. ¶ 37 A-F.)  The PTFA does not grant private parties a legal cause of action.  *Logan*, 722 F.3d at 1173.  Where a plaintiff has no private right of action, a declaratory judgment must be dismissed.  *N. Cnty. Commc'ns Corp. v. California Catalog & Tech.*, 594 F.3d 1149, 1160 (9th Cir. 2010).  Accordingly, Plaintiffs' claim for declaratory judgment should be dismissed in its entirety.

### B.  Unlawful Trade Practices Act

Oregon's Unlawful Trade Practices Act ("UTPA"), Oregon Revised Statutes (ORS) § 646.605-646.656, forbids 82 individual practices for use "in the course of [a] person's business, vocation or occupation."  OR. REV. STAT. §§ 646.607, 646.608.  A person is not limited to a natural person, but includes "corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity except bodies or officers acting under statutory authority of this state or the United States."  OR. REV. STAT. § 646.605(4).  The relevant provisions of the UTPA that Plaintiffs cite in their complaint declare that an unlawful trade practice occurs when a person:

> (a) Passes off real estate, goods or services as the real estate, goods or services of another.

> (b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.

> (c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

> . . . .

> (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.

. . . .

> (k) Makes false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred.

OR. REV. STAT. § 646.608(a-c, e, k).  Oregon law provides a private right of action for UTPA violations as follows:

> [A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages and the court may provide any equitable relief the court considers necessary or proper.

OR. REV. STAT. § 646.638(1).

Plaintiffs claims in subparagraphs 38 A and D and 39 D do not rely upon precluded issues.  Defendants contend that each of these claims fail under the FRCP 12(b)(6) standard.

### 1.    Subparagraph 38 A

Plaintiffs charge Defendants with "causing confusion as to the agency, affiliations, connections, associations, [and] approval to act for others, or provide services . . . ." (Compl. ¶ 38 (A).)  This claim alleges a violation of ORS 646.608(1)(c), which forbids "[c]aus[ing] likelihood of confusion as to affiliation, connection, or association with, or certification by, another."  Defendants argue that the attachments Plaintiffs reference in support of this claim directly contradict the claim, such that no reasonable jury could find that Defendants caused confusion regarding their associations.  (Mot. 12-13.)  Plaintiffs respond that whether there was a likelihood of confusion is an issue of fact, and must survive a motion to dismiss. (Opp'n 19.) The court agrees with Plaintiffs.  The documents Plaintiffs reference do not contradict their claim of confusion.  *Cf. Gonzales*, 759 F.3d at 1115.  Without such contradiction, the court must accept factual allegations in the complaint as true.  *Naffe*, 789 F.3d at 1035.  Under the text of ORS

646.608(1)(c), Plaintiffs state a claim for a violation of the UTPA. Plaintiffs do not disaggregate their UTPA damages by count, so it is unclear what ascertainable damages they have suffered based on the confusion claim to support a cause of action under ORS 646.638(1). (Compl. ¶ 41.) They have, however, stated a plausible claim upon which relief can be granted in subparagraph 38 A.

### 2.   Subparagraph 38 D

Plaintiffs allege that Defendants violated the UTPA by "[f]ailing or refusing to communicate with Plaintiffs regarding their tenancy, occupancy, right to possession, and access to the Property and their possession[s]." (Compl. ¶ 38(D).) Defendants challenge this claim, arguing that a failure to communicate is not actionable under the UTPA. Defendants are correct. Despite Plaintiffs' contention that omissions are actionable as a form of misrepresentation (Opp'n 20), failure to communicate regarding a subject matter is not actionable under any of the UTPA provisions Plaintiffs cite in their complaint. *See* OR. REV. STAT. § 646.608(1)(a-c, e, k). Plaintiffs' citation to *Moore v. Wells Fargo*, No. 3:13-cv-170-PA, 2013 WL 3965313 (D. Or. Aug. 1, 2013), is unavailing. *Moore* was decided under ORS 646.608(u), which incorporates by reference an administrative rule requiring mortgage loan servicers to deal with borrowers in good faith. *Id.* at *4. Plaintiffs do not make a claim under ORS 646.608(u). As non-borrowers, they could not state a claim under the administrative rule applied in *Moore*. *See id.* Accordingly, subparagraph 38 D fails to state a claim upon which relief can be granted, and should be dismissed.

### 3.   Subparagraph 39 D

Plaintiffs also allege that Defendants misrepresented, either affirmatively or by omission, that the Trust was not the owner of the property. (Compl. ¶ 39(D).) Supporting this claim,

Plaintiffs cite two attachments to the complaint: the motion for a writ of assistance (Exhibit 13) and a series of emails between McCoy and Katie Riggs, an attorney for Pite Duncan (Exhibit 17). Defendants contend that Plaintiffs fail to identify how this alleged misrepresentation is a UTPA violation. Defendants are correct. (*See* Compl. ¶ 39.) Further, Plaintiffs' opposition fails to clarify how this conduct would violate the UTPA. (Opp'n 20.) Where a plaintiff fails to allege how a factual allegation violates the UTPA, dismissal for failure to state a claim is appropriate. The misrepresentation claims in subparagraph 39 D should be dismissed, with leave to amend. *See Rubic v. Wells Fargo, N.A.*, No. 3:13-cv-01982-AC, 2014 WL 7877291, at *7 (D. Or. Nov. 24, 2014) (requiring repleading of a UTPA claim that did not specify which UTPA provisions an allegation violated).

## VI.  Motion to Strike Noneconomic Damages

Defendants move to strike (presumably pursuant to FRCP 12(f)) noneconomic damages from three of Plaintiffs' claims for relief. "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone*, 618 F.3d at 974-75. Thus, Defendants' motion to strike should be denied.

## VII.  Litigation Privilege

Pite Duncan argues Oregon's absolute litigation privilege bars all of Plaintiffs' claims. (Def. Pite Duncan Reply & Joinder ("Pite Reply"), Dkt. No. 22, at 2-5.) Defendants' motion did not assert this argument, and Plaintiffs had no opportunity to respond to it. At oral argument, the court allowed Plaintiffs a sur-reply to address the issue. Plaintiffs contend the litigation privilege protects only against defamation claims. (Pls' Surreply to Def. Pite Duncan's Mot. to Dismiss ("Surreply"), Dkt. No. 26, 2.) Plaintiffs also argue the absolute litigation privilege does not

apply to out-of-court statements.  (Surreply 4.)  Absolute litigation privilege raises two issues here: the scope of conduct protected and which of the claims the privilege bars.

Parties and their attorneys have absolute privilege for all "conduct undertaken in connection with litigation."  *Mantia v. Hanson*, 190 Or. App. 412, 417, 423 (2003).  The privilege exists to allow parties and attorneys freedom to pursue justice.  *Troutman v. Erlandson*, 286 Or. 3, 7 (1979) (quoting Restatement (Second) of Torts § 586 comment a).  Oregon's litigation privilege protects communications made during or in anticipation of a judicial proceeding.  *Wollam v. Brandt*, 154 Or. App. 156, 163-64 (1998).  The conduct must also have some relevance to the subject matter of the litigation, though the relevance standard is liberal.  *Id.* at 162-63 (citing *Irwin v. Ashurst*, 158 Or. 61, 68 (1938)).  For example, in *Wollam*, the privileged letters set out a potential claim and attempting resolve the issue without litigation.  *Id.* at 159-160.  While no litigation followed, litigation was "a distinct possibility."  *Id.* at 164.

Defendants' efforts to remove Plaintiffs are within the scope of the litigation privilege. Defendants sought Plaintiffs' ouster from the Property through judicial proceedings.  Filings in the Foreclosure Judgment and seeking subsequent writs of assistance were protected filings in judicial proceedings.  Defendants' related communications with Plaintiffs were pertinent to actual or possible proceedings (i.e. future writs of assistance) in the Foreclosure Action.  Thus, such communications were in reasonable anticipation of litigation, similar to the letters in *Wollam*.  *See* 154 Or. App. at 159-60.

But, the litigation privilege does not protect the post-removal communications about Plaintiffs' personal property.  These communications, which give rise to Plaintiffs' trespass to chattels claim, occurred after the sheriff's office removed Plaintiffs from the Property.  Once the

sheriff's office removed Plaintiffs, the litigation was seemingly at an end.[4]  The policy basis for the litigation privilege does not justify protecting post-litigation statements.  *Brown v. Gatti*, 195 Or. App. 695, 703 (2004), *aff'd in part, rev'd in part on other grounds*, 341 Or. 452 (2006). Defendants' post-removal communications with Plaintiffs are therefore beyond the scope of the litigation privilege.

The litigation privilege protects against all tort claims unless the underlying litigation satisfies the elements of wrongful initiation of civil proceedings.  *Mantia*, 190 Or. App. at 429. While litigation privilege originated as a bar to defamation claims, Oregon courts explicitly extended the privilege to all tort actions.  *Id.* at 420-27; *see also Yeti Enterprises Inc. v. NPK, LLC*, No. 3:13-cv-012003-ST, 2015 WL 3952115, at *5 (D. Or. June 29, 2015) (reaching the same conclusion).  Plaintiffs cannot satisfy the elements of wrongful initiation because as they did not prevail in the Foreclosure Action.  *See Mantia*, 190 Or. App. at 429.  Plaintiffs have only one remaining claim that is potentially subject to the litigation privilege: the UTPA claim in Paragraph 38(A).  Thus, the court must decide whether a UTPA claim is a "tort" under *Mantia*.

Statutory torts are subject to the litigation privilege.  Where the Oregon legislature explicitly or implicitly creates a cause of action for violating state law, such a cause of action is a statutory tort.  *See Gattman v. Favro*; 306 Or. 11, 14-15 (1988).  *Mantia* is silent on whether the litigation privilege extends to statutory torts in addition to common-law torts.  Based on the policy rationale for the litigation privilege, the litigation privilege should also bar statutory torts. An attorney's "utmost freedom in their efforts to seek justice for their clients" is equally threatened by common-law and statutory tort liability.  *See Troutman*, 286 Or. at 7.  Accordingly,

---

[4] Plaintiffs regained access to the property by force following these communications, which prompted renewed judicial proceedings.  Nothing in the communications indicates Defendants anticipated these actions.

Defendants' motion to dismiss the paragraph 38(A) claim should be granted only as to communications related to actual or reasonably anticipated litigation.[5]

### Conclusion

For the reasons stated above, Defendants' motion to dismiss (Dkt. Nos. 10 & 13) should be GRANTED IN PART and DENIED IN PART.  Defendants' motion to strike noneconomic damages (Dkt. Nos. 10 & 13) should be DENIED.  Due to the Foreclosure Judgment, the possession and writ issues are precluded from relitigation in this action.  Accordingly, Plaintiffs' claims should be dismissed insofar as they depend on relitigation of the possession or writ issues. Plaintiffs' UTPA claims (except for those in paragraph 38(A & D) and 39(D)), trespass to real property, nuisance, and negligence claims are barred by issue preclusion.  Further, Plaintiffs' declaratory judgment claim and UTPA claims in paragraph 38(D) and 39(D) fail to state a claim upon which relief can be granted.  Plaintiffs' trespass to chattels claim and UTPA claim in paragraph 38(A) state claims on which relief can be granted, as limited by the absolute litigation privilege.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 21, 2015.  If no objections are filed, then the Findings and Recommendation will go under advisement at that date.  If objections are filed, then a response is due within 14

\\\\\

\\\\\

\\\\\

\\\\\

---

[5] Exhibits 10-11, 13-14, and 16-17 are all communications related to Defendants' attempts to remove Plaintiffs using judicial proceedings.

days after being served with a copy of the objections.    When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of December, 2015.


<u>            /s John V. Acosta            </u>
JOHN V. ACOSTA
United States Magistrate Judge